JUDGE ROBERTSON
delivered the following opinion,
in which JUDGE PETERS
concurred:
On the 25th of August, 1865, J. J. Carder and Henry Wallace, holding the legal title, and W. F. Carder owning the equitable right, to a tract of land of about one hundred and twenty acres,' near Williamstown, Grant county, Kentucky, sold, and J. J. Carder and H. Wallace conveyed to Joshua Pack the tract for the consideration of four thousand four hundred and sixty-seven dollars and seventy-five cents, payable in two equal installments, one on the 25th of December, 1865, and the other on the 25th of December, 1866,'by G. W. Nichols, who, being indebted to that extent to Pack, for money loaned or deposited, and the vendor’s refusing to trust Pack, executed to W. F- Carder, alone, his own notes for each of those installments. The conveyance, reciting those facts, reserved no express lien on the land. On the 5th of February, 1866, W. F. Carder assigned to H. Wallace the note for the last installment; and on the 2d of January, 1867, no portion of the assigned note, and only about half of the other, having been paid, two separate and afterwards consolidated petitions in equity were filed against Nichols and Pack for enforcing payment by a sale of the land, each petition claiming a lien and alleging that a conventional express lien was omitted through inadvertence or mistake.
Pack’s answer denied the entire allegations as to lien, and insisted that Nichols’ notes, in discharge of Nichols’ debt to him, were given and accepted as satisfaction by Pack, and as a waiver of lien.
During the progress of the case, the circuit court adjudged against Nichols the payment of the balance due on his notes, and a fi. fa. to enforce the judgment *131 having been returned “no property,” the court after-wards, on final hearing, decreed the sale of Pack’s land to satisfy that personal judgment against Nichols.
This appeal seeks the reversal of the decree for the sale of the land, which seems to this court erroneous, on the ground that Pack, never having been personally liable for the consideration, there is no lien, either express or implied, on his land.
The pleadings, exhibits, and oral evidence, though in some respects rather vague, yet authorize the inference that Pack’s only resource for buying a home was his money in the hands of Nichols, then accredited as not only solvent, but rich and safe; that it was his object to convert that fund into the land which he bought, and that only for the accommodation of Nichols, who preferred not to pay Pack immediately, the vendors, unable to sell without such payment or an extension of credit by themselves to Nichols’ equivalent to payment, so far as Pack was conceimed, chose to take Nichols’ notes on time as so much money thereby paid by him to Pack and by Pack to them.

Why else did they not take Pack's assignment of the Nichols debt, or Pack's note with Nichols as surety ?

The deduction from this sufficiently sustained hypothesis is, that the land being sold, not on the credit of Pack, but on that of Nichols alone, the acceptance of Nichols’ notes was understood as payment by Pack of the whole consideration, and by Nichols of his debt to Pack; and that, consequently, Pack neither owes, nor ever owed, the appellees anything for the land.
The only consistent construction of all the facts is, that Pack agreed to buy the land if the vendors would take Nichols for pay, and substitute him as the debtor, whereby Pack surrendered all right to interest to accrue of *132 Nicbols’ debt to him, and all control over the collection of the debt. And it seems to us that the recitals in the conveyance corroborate this conclusion, and not only do not imply a lien, but a waiver of it; and the authorities show that, even without that substitution, the acceptance of the notes presumptively waived all lien.
Before the enactment of the 26th section of the Revised Statutes, chapter 80, page 230, a vendor of land not fully paid for, held, if he took no other collateral security, an implied equitable lien on the land, which he might loose in favor of a subsequent purchaser or creditor of the vendee, without actual or constructive notice of the lien. The object of this 26th section was to prescribe a certain mode of giving that notice on the face of the deed itself. Such a deed does not, as hitherto expounded by this court, give a lien, but only affords proof that the equitable lien has been waived, unless the deed contains the prescribed recitals.
The recitals in the conveyance in this case show that the entire consideration remained unpaid, but was to be paid by Nichols, who had executed two notes for it to a person no party to the deed. There could have been no implied lien in favor of the holders of the legal title, who made the conveyance to Pack without owning any beneficial interest in the land or in the consideration. Nor, as the deed did not show that W. F. Carder, to whom Nichols’ notes were executed, was beneficial owner of the land, or why he was the obligee, could a lien be implied in his favor. The recitals, therefore, could not, as contemplated by the statute, have operated as notice either that a lien was reserved, or in whose favor; but showing, as they did, that the consideration was to be paid by one stranger to another stranger, they imported that there was no lien, and especially against Pack, who seemed to be *133 not liable for any part of the consideration. It seems to us that the deed does not recognize a lien any more than if it had not stated that the consideration had not been paid ; and the statute provides, that without the required recital in the deed, “ the vendor shall not thereby have a lien.” The non-conformity of the recital to the statute operated, therefore, as a waiver of any lien, and as notice to the world that the land in Pack’s hands was unencumbered. (Chapman vs. Stockwill, 18 B. Mon., 653.)
The recital does not appear to have been made for the purpose of securing a lien, but only to show, as every conveyance should, the extent and character of the consideration, who was to pay it, and to whom. And it seems to us difficult for scrutiny to detect any evidence that Pack owed, or was in any way to be responsible for, the consideration, or that the recital was made for reserving a lien on his land. Had there been any such design, we must think that it would have been indicated by some other phraseology more specific and intelligible.
This conclusion, obvious, as we think, on the face of the deed, is fortified by the following extraneous considerations :
. 1. It is intrinsically incredible that Pack would have consented to the extension of credit to Nichols — to suspend his own right to collect his debt then due by a solvent debtor- — to surrender indefinite control over it to the vendors not liable to him for diligence as assignees — and to still hold his land subject to the payment of a debt which he thought he had paid, and the most of which might be and has been lost by the indulgence and extended credit of the vendors.
2. If a lien had been intended, it is probable that the circuity, delay, and expense of the suit against Nichols on his notes, would have been avoided by a suit at once for enforcing payment out of the land.
*134 3. If, in such a case, a lien on the land had been intended, there can be no reasonable excuse for not expressing it in the deed, instead of constructively expressing a negative idea.
4. The appellees themselves seem to have thought this when they, in the progress of the case, amended their petition by abandoning an implied lien and asserting an oral argument for an express lien, and averring that it was omitted through mistake.
5. Nichols, who was a principal in the negotiation, and present when the deed was executed, testifies that he heard nothing about a lien.
6. The appellant’s step-son testifies to facts conducing to the presumption that, after Nichols had proved insolvent, the appellees did not hold the appellant responsible, or rely on a lien on his land.
These considerations, fully and fairly weighed, authorize the judicial ‘conclusion that all resulting lien securable by the statute was Avaived, and that there is no sufficient proof of an express contract for a written lien. And these same facts not only do not repel, but fortify the prima facie presumption of a waiver of all lien on Pack’s land by the acceptance of Nichols1 notes, even as collateral security only. Nor can we see how, against these fads, that presumption has been neutralized.
Under these circumstances it would appear hard for the appellant, without imputed fault, to lose both his money and his land. And it does seem to us that such an appeal to a court of conscience for its extraordinary aid in forcing such a double loss for the benefit of negligent parties, should not be heeded. The petition ought to be dismissed.
This is the opinion of Judges Robertson and Peters, who would concur in a total reversal; but the Chief Jus *135 tice and Judge Hardin not concurring, equal division of the court prevents such a reversal. The court is, of course, unanimous in the partial reversal adjudged in • the separate opinion of the Chief Justice and Judge Hardin.